UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 07 2011
BROOKLYN OFFICE

-----------------------------------------------------------x
RICHARD J. WHALEN,

                         Petitioner,

        -against-

FEDERAL BUREAU OF PRISONS,

                         Respondent.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-1572 (ENV)

**VITALIANO, D.J.**

Pro se petitioner Richard J. Whalen is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth below, Whalen's writ is denied and his petition is dismissed.

## I. BACKGROUND

On May 24, 2000, petitioner was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and sentenced to 120 months imprisonment, followed by three years supervised release. On October 20, 2008, while serving a portion of his term at the Coolidge House, a halfway house in Boston, Whalen received a disciplinary infraction for refusing a drug test. The next day, he escaped from Coolidge House. Petitioner alleges that he was returned to custody on October 24, 2008 and was housed at the Plymouth County House of Correction by the United States Marshals Service. He has, however, submitted no evidence of his detention there, and the records submitted by the government do not reflect such a detention.

On December 4, 2008, the Coolidge House Community Discipline Committee (the "CDC") held a hearing regarding Whalen's infractions. It imposed the following sanctions for refusing to take a required drug test and failing to show up to work: (1) disallowance of 53 days

1

of good conduct time; (2) forfeiture of 100 days of nonvested good conduct time; (3) loss of visitation for one year; (4) restriction to noncontact visits for one year and visits only with immediate family; (5) a disciplinary transfer; (6) loss of commissary access for six months; (7) loss of telephone access for six months; and (8) transfer to a secure facility.

On December 15, 2008, BOP records indicate that petitioner was transferred to the custody of the United States Marshals Service, and, on January 23, 2009, he arrived at the Metropolitan Detention Center in Brooklyn ("MDC"). On February 9, 2009, Whalen filed a BP-10 (a regional administrative remedy) with BOP, challenging the sanctions issued at the CDC hearing. The application was initially rejected for improper filing, but after resubmission, BOP granted petitioner a new hearing. On April 22, 2009, Whalen arrived at his designated facility, United States Penitentiary Canaan in Waymart, Pennsylvania, and, approximately a week later, he appeared in person for a rehearing on his disciplinary infractions. In addition to upholding the previously imposed sanctions, the hearing officer considered the escape charge and disallowed an additional 22 days of good conduct time and 60 days of nonvested good conduct time.

Whalen filed the instant petition in the United States District Court for the District of Massachusetts, challenging the disciplinary hearing decision which resulted in, among other sanctions, a loss of 222 days[1] of earned good-conduct time. His petition requested: (1) a reversal of a disciplinary hearing officer's findings; (2) the return of 222 days of earned good-conduct time; and (3) his immediate release from custody. The habeas proceeding was transferred to this district, because, at the time of filing, Whalen was incarcerated at MDC. See 28 U.S.C.

---

[1] While it has no bearing on the outcome, it is unclear how Whalen calculates the number of days lost. The disciplinary record is consistent with Whalen's petition, which states that he lost 222 days. However, the disciplinary record includes sanctions issued at a rehearing that occurred *after* his petition was filed. The government, on the other hand, claims the total number of days lost is 235. While the discrepancy is noted, it is irrelevant given the disposition of Whalen's petition.

2

§ 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 447, 124 S. Ct. 2711, 2724 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Whalen was released from prison on July 2, 2009 and is currently on supervised release.

## II. DISCUSSION

### A. Standard of Review

Pursuant to 28 U.S.C. § 2241, federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States," may seek habeas corpus review. 28 U.S.C. § 2241(c)(3). Relief under § 2241 is available to a federal prisoner who challenges the manner in which a sentence is implemented, as opposed to challenging the underlying legality of the conviction. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (citing Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir. 1997)). A § 2241 petition is thus limited to challenges "to the execution of a sentence . . . [which] includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) (emphasis in original) (quoting Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir.2001)).

### B. Mootness

At threshold, the government argues that the petition should be dismissed as moot because Whalen was released from prison on July 2, 2009. Indeed, at all stages of litigation, courts are limited to hearing cases that present a case or controversy under Article III, § 2 of the Constitution. "The parties must continue to have a personal stake in the outcome of the lawsuit" and that "the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523

3

U.S. 1, 7, 118 S. Ct. 978, 983 (1998) (internal citation omitted). Pointedly, in this context, a petitioner's habeas corpus petition is deemed moot when he attacks a sentence that has expired during the course of the proceedings. Lane v. Williams, 455 U.S. 624, 631, 102 S. Ct. 1322, 1327 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot."). Moreover, "[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir.1983).

The government's argument that this case is moot borders on disingenuous. If standing in Whalen's shoes, counsel would know that petitioner has not "finished serving his sentence" because his liberty remains restricted by supervised release. See, e.g., Tisdale v. Menifee, 166 F. Supp. 2d 789, 791 (S.D.N.Y. 2001) (quoting Jones v. Cunningham, 371 U.S. 236, 242, 83 S. Ct. 373, 377 (1963)) (Allowing petitioner to pursue his § 2241 habeas claim because his supervised release was considered being "in custody"). There is no question, moreover, that 28 U.S.C. § 2243 authorizes the district court to provide habeas relief as law and justice require, including a reduction in a petitioner's term of supervised release. Levine, 455 F.3d at 77 (citing Sash v. Zenk, 428 F.3d 132, 133 (2d Cir. 2005)); see 18 U.S.C. § 3583(e) (providing for termination of supervised release and discharge). Here, if Whalen's 222 days of good conduct time is credited, it would decrease the remaining period of supervised release, which "would constitute effectual relief." Levine, 455 F.3d at 77. See also Preiser v. Rodriguez, 411 U.S. 475, 481, 93 S. Ct. 1827, 1832 (1973) (finding habeas corpus relief is the appropriate remedy for petitioners seeking to restore good-time credit which would result in either shortening the length of their actual prison confinement or actual relief). Whalen's petition is, therefore, far from moot.

## C. **Failure to Exhaust Administrative Remedies**

His petition is also far from a winner. It suffers from other procedural bars. A federal

4

prisoner seeking relief from adverse custodial conditions under § 2241 must first exhaust his federal administrative remedies. Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). Since BOP is the agency responsible for administering a federal prisoner's sentence, a petitioner must first exhaust all available administrative remedies provided by BOP before seeking any judicial review. See Bogarty v. Warden of MDC, Brooklyn, 09-cv-3711, 2009 WL 4800089, at *1 (E.D.N.Y. Dec. 11, 2009) (citing United States v. Pineyro, 112 F.3d 43, 45 (2d Cir. 1997)); Stergios v. United States, 09-cv-5108, 2010 WL169484, at *2 (E.D.N.Y. Jan. 15, 2010). But because "[j]udicial exhaustion is not a jurisdictional requirement . . . the court may excuse exhaustion if it appears that an administrative appeal would be futile, or because the appeals process is shown to be inadequate to prevent irreparable harm to the [petitioner]." United States v. Basciano, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005) (internal citations omitted).

Inmate disciplinary procedures are outlined in 28 C.F.R. § 541 and BOP's administrative remedy procedure for federal inmates is provided in 28 C.F.R. § 542. Under § 542.10(a), an inmate may "seek formal review of an issue relating to any aspect of his/her own confinement" through the administrative remedy program. The program provides that an initial appeal (known as the BP-10) must be submitted to the Regional Director for the region where the inmate is incarcerated, and, if the inmate is unsatisfied with the response, he may file an appeal (known as the BP-11) with the General Counsel within 30 calendar days of the date the Regional Director signed the response. 28 C.F.R. §542.15(a). "Appeal to the General Counsel is the final administrative appeal." Id.; see also Stergios, 2010 WL 169484, at *2 (holding petitioner failed to exhaust his administrative remedies because despite having "filed several BP-10 forms" he did not file an appeal with the General Counsel, and "no administrative remedy is deemed finally exhausted under the BOP's Administrative Remedy Program until considered by the Office of the General Counsel") (internal quotation and citation omitted).

With no apparent dispute about it, the record reflects that Whalen did initiate administrative proceedings in that he appealed the hearing officer's determination by filing a BP-10 on February 9, 2009. After it was rejected for improper filing, he filed again on March 2, 2009. He then filed the instant habeas petition on March 31, 2009, prior to his new hearing, and before ever filing a BP-11.[2] Whalen's petition alleges that he did not exhaust the administrative remedies available to him because when he attempted to go through the proper channels, "the Administrative Remedy Coordinator D. Boone for the North East region tried to put [him] in a time bar even though [he had] never received a D.H.O. report which by policy starts the Administration remedy clock."[3] It is true that a prisoner's procedural default may be excused, but only upon a showing of "cause and prejudice." Carmona, 243 F.3d at 634. This standard may be met "[w]here 'legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies.'" Bogarty, 2009 WL 4800089, at *2 (citing Carmona, 243 F.3d at 634). In determining whether a prisoner has shown cause, a court may consider objective factors including "interference by officials that makes compliance with . . . procedural rule[s] impracticable." Tineo v. United States, 977 F. Supp. 245, 253 (S.D.N.Y. 1996). Prejudice typically exists "when the [p]etitioner shows actual harm resulting from the alleged violation." Id. (citing Rivera-Sanchez v. Crist, 832 F. Supp. 276, 282 (D. Ariz. 1993)).

---

[2] Had the instant petition been filed after the second hearing, this matter would still be procedurally barred given that the proper action would have been to file a BP-11 and appeal to the General Counsel.

[3] The DHO is required to prepare and provide an inmate with a written record of the hearing proceedings, including the reasons for any sanctions along with its decision. 28 C.F.R. § 541.8(h). This record must be given to the inmate "ordinarily within 15 work days of the decision" and the DHO must also ensure that the required information is entered into the SENTRY record keeping system as part of the inmate's Chronological Disciplinary Record. BOP Program Statement 5270.09

6

Whether or not it is true that Whalen did not receive a written copy of the hearing disposition,[4] compliance with the appeals process was not impractical. This is simply not the type of case where circumstances prevented petitioner from pursuing an appeal—in this case an appeal the inmate had actually started. Cf. Hinebaugh, 137 F. Supp. 2d at 75 (petitioner was prevented from filing an administrative appeal because his legal files were confiscated). Moreover, Whalen cannot demonstrate prejudice, since, as it turns out, he was eventually granted another in-person hearing, which he also did not appeal. Petitioner's suggestion that the administrative remedy process "would [have been] futile" and that "there is a 'sound judicial' reason for lack of exhaustion" is entirely conclusory and factually unsupported. By not filing the BP-11 to get a determination from the Office of the General Counsel, Whalen inexcusably failed to exhaust his administrative remedies and, therefore, cannot seek judicial review.

## D. Due Process

But even assuming exhaustion of administrative remedies, Whalen's claim still fails on substance. Petitioner argues that his due process rights were violated because his first hearing was held in absentia even though he was allegedly in custody at the time, and because his new hearing was untimely. "Prison disciplinary proceedings are not part of a criminal prosecution, and thus the full panoply of rights due a defendant in such proceedings does not apply." Maydak v. Warden, FCI Raybrook, 1 F. App'x 55, 56 (2d Cir. 2001) (quoting Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975 (1974)). As a consequence, a prison disciplinary hearing

---

[4] As to Whalen's unsupported allegation that he was not given a written copy of the initial disposition, this, standing alone, does not rise to the level of a constitutional violation. See, e.g., Rahman v. Wingate, 740 F. Supp. 2d 430, 432 (S.D.N.Y. 2010) (petitioner's allegations that he did not receive an incident report within twenty-four hours of the incident and that his punishment for the incident was not rendered within three weekdays did not rise to the level of a constitutional deprivation on their own). Whalen was aware that there had been a decision, aware of what it was, and could have initiated an appeal in a timely fashion. The first hearing, of course, took place while Whalen was on escape, which occasioned absence of other due process elements. The second hearing completed the process and supplied the missing ingredients.

7

typically will satisfy the requirements of due process under the Fifth or Fourteenth Amendment if:

> (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses (as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals); (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision.

Perez v. Terrell, 08-cv-1373, 2011 WL 198437, at *2 (E.D.N.Y. Jan. 20, 2011) (citing Homen v. Hasty, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (citing Wolff, 418 U.S. at 563-67, 94 S. Ct. at 2978-80)); see also 28 C.F.R. § 541.17 (explicating procedures before the disciplinary hearing officer). Furthermore, "inmates have a liberty interest in good time credit they have already earned." Stergios, 2010 WL 169484, at *2 (quoting Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000)). Therefore "due process requires that 'the findings of the prison disciplinary board [b]e supported by some evidence in the record.'" Williams v. Menifee, 331 F. App'x 59, 60-61 (2d Cir. 2009) (quoting Superintendent, Massachusetts Correctional Institution at Walpole v. Hill, 472 U.S. 445, 454, 105 S. Ct. 2768, 2773 (1985)).

But, most notably, in instances of inmate escape, procedures are, naturally, somewhat different. Stergios, 2010 WL 169484, at *3. While an inmate ordinarily does have a right to be present at his DHO hearing, BOP's regulations specify that:

> **When an inmate escapes or is otherwise absent from custody, the Discipline Hearing Officer shall conduct a hearing in the inmate's absence** at the institution in which the inmate was last confined. **When an inmate returns to custody** following absence during which sanctions were imposed by the DHO...**the Warden shall have the charges reheard before the Discipline Hearing Officer *ordinarily* within 60 days after the inmate's arrival at the institution to which the inmate is designated after return to**

8

> **custody**, and following appearance before the Unit Discipline Committee at that institution... All the applicable procedural requirements for hearings before the Discipline Hearing Officer apply to this rehearing, except that written statements of witnesses not readily available may be liberally used instead of in-person witnesses. The DHO upon rehearing may affirm the earlier action taken, may dismiss the charge(s), may modify the finding of the original DHO as to the offense which was committed, or may modify but may not increase the sanctions previously imposed in the inmate's absence.

28 C.F.R. § 541.17(d) (emphasis added). Whalen escaped from Coolidge House on October 21, 2008, bringing § 541.17 into play. As noted above, Whalen claims that he was returned to custody on October 24, 2008 and housed at the Plymouth County House of Correction. BOP records, though, indicate that he did not return to BOP custody until December 15, 2008.[5] Therefore, regardless where the United States Marshals Service housed him pending his return to BOP custody, the initial hearing at Coolidge House was properly held in petitioner's absence pursuant to § 541.17(d), providing adequate due process. Moreover, and dispositively, eight days after arriving at his designated correction facility—and after filing the instant petition— Whalen was granted a second (and this time) *in-person* hearing.

Whalen argues that the second hearing was untimely because it was not held within 60 days after he was turned over to the United States Marshal for transport to MDC. This argument holds no water for a number of reasons. First, during this time, petitioner was considered to be "in transit" as opposed to in residence at his "designated" facility.[6] Further, even if construed as

---

[5] It should be noted that the dispute over when Whalen returned to BOP custody is somewhat academic because BOP's Program Statement explains that "[w]hen an inmate escapes, and is in local custody where a hearing may be held, **an in-person rather than an in-absentia hearing may be held *at the DHO's discretion***." BOP Program Statement 5270.09 (emphasis added). Therefore, even assuming petitioner was in local custody at the time the first hearing was held, no BOP procedures were violated. It matters not whether local custody results from a local charge or by contract with USMS. The detainee is in local, not BOP, detention.

[6] The official BOP SENTRY report designates both his time in the custody of the United States

9

"being" at his "designated" institution, failure to hold the new hearing within 60 days still does not run afoul of § 541.17(d), which simply states that the new hearing should "ordinarily" be held within 60 days of return. Stergios, 2010 WL 169484, at *4 ("28 C.F.R. § 541.17(d) states only that the re-hearing should 'ordinarily' be held within 60 days after the inmate's arrival at the designated institution, and 'does not establish a definitive requirement for a hearing within sixty days.'") (quoting Werner v. Bureau of Prisons, 90-cv-4841, 1991 WL 19989, at *2 (S.D.N.Y. Feb. 11, 1991)). The fact remains that a new hearing was granted, Whalen was given written notice of the hearing, it was conducted by a neutral hearing body, Whalen was given the opportunity to present evidence, and the hearing officer rendered a decision, which taken together, satisfies minimum due process requirements. Wolff, 418 U.S. at 563-67, 94 S. Ct. at 2978-80.

Based on the relief sought, it appears that Whalen also implies that the hearing officer's rulings or sanctions were somehow substantively invalid. To the extent petitioner actually challenges the substance of these decisions, the challenge is nonmeritorious. Pointedly, the district court's role in this form of habeas review is to determine whether the hearing officer's ruling is supported by "some evidence" in the record, not to conduct a de novo relitigation of the prior rulings. Perez, 2011 WL 198437, at *3 (citing Superintendent, Massachusetts Correctional Institution at Walpole, 472 U.S. at 455-56, 105 S. Ct. at 2774). Petitioner does not contest the factual findings that he refused a drug test or that he failed to show up for work or that he escaped from Coolidge House. Though not dispositive, it is surely unhelpful for petitioner that he cannot dispute that the sanctions imposed were in keeping with the applicable guidelines. See 28 C.F.R. § 541.13, Table 3 (permissible sanctions include forfeiture of nonvested good conduct

---

Marshal and MDC as "In-Transit Facility" as opposed to his time at the United States Penitentiary Canaan, which is designated as "Assigned Facility."

time (up to 100%) and disallowance of ordinarily between 50 and 75% good conduct time credit for "[r]efusing to provide a urine sample or to take part in other drug-abuse testing" and forfeiture of nonvested good conduct time (up to 50% or 60 days, whichever is less) and disallowance of 25-50% days of good time credit for "[e]scape from unescorted Community Programs"). Bluntly, there is far more than "some" evidence to support the sanction decision under review.

Whatever the route Whalen would have the Court follow, it is clear that there are no grounds for disturbing his conditions of custody and, consequently, his petition must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the petition for habeas corpus filed by Richard J. Whalen is dismissed and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
June 30, 2011

ERIC N. VITALIANO
United States District Judge